IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Vincent Rose<br>Plaintiff<br>v.<br>The Board of Election Commissioners<br>for the City of Chicago, sitting as<br>Langdon D. Neal, Chairman, Richard<br>A. Cowen, Secretary/Commissioner and<br>Marisel A. Hernandez Commissioner<br><br>AND, the State of Illinois through Lisa<br>Madigan Illinois Attorney General | NO. 15CV00382 |

COMPLAINT FOR RELIEF

Plaintiff Vincent Rose presents the following complaint against Defendant Board of Election Commissioners for the City of Chicago, sitting as Langdon D. Neal, Chairman, Richard A. Cowen, Secretary/Commissioner and Marisel A. Hernandez Commissioner and the State of Illinois through Lisa Madigan Illinois Attorney General

A. Parties

Plaintiff Vincent Rose is a natural person whom resides at 7425 S. South Shore, Chicago, Illinois 60649. Defendant Board of Election Commissioners for the City of Chicago of 69 W. Washington Street, Suites 600/800 Chicago, Illinois 60602 is a State operated agency for elections residing and operating within the County of Cook. The State of Illinois through Lisa Madigan Illinois Attorney General is a Governmental Corporation and Agency located within the State of Illinois.

1

## B. Jurisdiction

The Jurisdiction of the Federal Courts of the United States of America "*** shall extend to all Cases, in Law and Equity, arising under this Constitution, [and] the Laws of the United States, ***" U.S. Const. art. III, § 2, cl. 1. Plaintiff's primary complaint against Defendant arises under 42 U.S.C.A. § 1983 (West) of the Laws of the United States of America.

Furthermore, The United States District Courts have original jurisdiction with regard to any civil action authorized by law to be commenced by any person to redress the deprivation, under color of any State law, statute ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States. See 28 U.S.C.A. § 1343 (West).

## C. Venue

Plaintiff maintains it principle place of residence in Cook County Illinois. Defendant, both being Government agencies also maintains their principle place of business in Cook County Illinois.

Furthermore, Defendant is a resident of Cook County Illinois, the City of Chicago, and the substantial part of the events or omissions giving rise to the claim occurred in Cook County. Accordingly, this civil action is be brought within the judicial district in which the Defendant resides and all defendants are residents of the State in which the district is located;

within a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, and where a substantial part of property that is the subject of the action is situated.

### D. Factual Basis for Cause of Action

1. Plaintiff Vincent Rose filed his Petitions for nomination as candidate for Alderman in the 7th ward of the City of Chicago.
2. William Taylor and Michael Anderson objected to plaintiff's nomination petitions.
3. The Board of Elections conducted two records examinations.
4. The Hearing officer, after two separate records examinations and hearings recommended to the Defendant Board that Plaintiff Candidate's name be excluded from the names of the candidates based on Plaintiff's failure to obtain the 4% of Signatures on January 12th, 2015.
5. Plaintiff however, has more than 300 valid signatures and possibly 400+ valid signatures.
6. In the 2015 elections each petition for nomination of the candidate is required to contain 472 signatures based on the following mathematical formula. ( 590357 / 50 ) x .04=472

7. The Illinois General Assembly amended IL ST CH 65 § 20/21-28 which provides as follows

    "All nominations for alderman of any ward in the city shall be by petition. All petitions for nominations of candidates shall be signed by such a number of legal voters of the ward as will aggregate not less than 4% of all the votes cast for alderman in such ward at the last preceding general election. For the election following the redistricting of wards petitions for nominations of candidates shall be signed by the number of legal voters of the ward as will aggregate not less than 4% of the total number of votes cast for mayor at the last preceding municipal election divided by the number of wards."

8. Prior to this law set the requirement at 2%

9. In 2012 there was a redistricting of the Wards within the City of Chicago.

10. In 2011 590,357 votes were cast for mayor at the last preceding municipal election in 2011.

11. Thus the 2015 petition for nomination of the candidate is required to contain 472 signatures based on the following mathematical formula. ( 590357 / 50 ) x .04=472

12. Each ward for the City of Chicago had the following numbers of votes cast in 2011 in the Aldermanic Election.

1. 9847
2. 14611
3. 8928
4. 8577
5. 11743
6. 15045
7. 12345
8. 15202
9. 11010
10. 10701
11. 11026
12. 4872
13. 11601
14. 5907
15. 7059
16. 6116
17. 9900
18. 15442
19. 23727
20. 7467
21. 15376
22. 4353
23. 16448
24. 9255
25. 8823
26. 7438
27. 9429
28. 6780
29. 10603
30. 6251
31. 5508
32. 13437
33. 6667
34. 14183
35. 8786
36. 14052
37. 8778
38. 12256
39. 10189
40. 8712
41. 20109
42. 15893
43. 14267
44. 11129
45. 15879
46. 13906
47. 16877
48. 12862
49. 9617
50. 11487

1. COUNT ONE: VIOLATION OF PLAINTIFF'S RIGHT TO FREE SPEECH

Plaintiff is "running for office". "It has long been established that political activities (i.e. running for office, supporting a particular political candidate) are protected by the First Amendment. *Medina v. City of E. Chicago, Indiana*, 184 F. Supp. 2d 805, 819 (N.D. Ind. 2001).

"It is further well-settled that "[t]he impact of candidate eligibility requirements on voters implicates basic constitutional rights" to associate politically with like-minded voters and to cast a meaningful vote." *Stone v. Bd. of Election Comm'rs for City of Chicago*, 750 F.3d 678, 681 (7th Cir. 2014).

The General Assembly passed IL ST CH 65 § 20/21-28. A generally applicable ordinance is nothing if not the 'policy' of the municipality, enacted by those with final policy-making authority." Oxford Bank & Trust & Fifth Ave. Prop. Mgmt. v. Vill. of La Grange, 879 F. Supp. 3 2d 954, 966 (N.D. Ill. 2012).

Plaintiff alleges that such statue is unconstitutional and violates the Plaintiff's first amendment rights not only as a candidate running for office but also as an independent voter. Plaintiff further alleges that the law denies equal protection of the laws and infringes First Amendment rights to stand for public office and to vote for the candidate of one's choice.

Specifically, Plaintiff alleges that the increase from 2% to 4% is not reasonable, is discriminatory, and is a severe burden imposed on ballot access and the first amendment rights for the voters and the candidates. Plaintiff further asserts that the Government does not have a compelling or even significant reason for increasing the amount of signatures required.

Plaintiff further alleges that IL ST CH 65 § 20/21-28 is violative of due process under the Illinois State Constitution and the United States Constitution in that it's means are not rationally related to any legitimate government interest, are arbitrary, are not the least restrictive means, do not further any compelling or substantial government interest, and such law was passed in violation of the single subject rule.

Plaintiff further alleges that the General Assembly could have counted each precinct's votes in the prior elections and adjusted the numbers when the redistricting was complete and did not need make the 4% requirement of signatories dependent on the prior on the mayoral race.

Plaintiff further alleges that the formula for determining the number of signatures needed is not reasonable, is discriminatory against minorities and/or on the basis of residence within certain geographical boundaries, is violative of equal protection and is a severe

7

burden imposed on ballot access for the voters and the candidates. The 2015 petition for nomination of the candidate is required to contain 472 signatures based on the following mathematical formula. ( 590357 / 50 ) x .04=472. The determination of the number of signatures needed for an aldermanic candidate within a ward based on the number of voters in the 2011 election whom voted for <u>the mayor</u> violates "the constitutional theme of equality among citizens in the exercise of their political rights." *Moore v. Ogilvie,* 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969). The idea that one groups voting strength is dependent on another is hostile to the one man, one vote basis of our representative government and violative of due process and the 1st, 2nd, and 14th and amendment, and equal protection. See <u>Id.</u> "Once the geographical unit for which a representative is to be chosen is designated, all who participate in the election are to have an equal vote—whatever their race, whatever their sex, whatever their occupation, whatever their income, and wherever their home may be in that geographical unit." *Gray v. Sanders*, 372 U.S. 368, 379, 83 S. Ct. 801, 808, 9 L. Ed. 2d 821 (1963)

     While 472 signatures seem to be a uniform 4% throughout the 50 wards, it is not when actually applied. In the 19th ward 472 signatures require a candidate to obtain 1.9% of the votes cast in the prior ward election in 2011. 472 signatures in the 12th ward require a

8

candidate to obtain 9.6% of the votes cast in the prior ward election. Plaintiff argues that there is no rationale, compelling, or other proper basis for the different treatment of the class of aldermanic candidates and that allowing some candidates to access the ballot with only 1.9% of the signatures and providing for 50 different variable percentages is not rationale, is discriminatory, unnecessary, and violative of equal protection. "How then can one person be given twice or 10 times the voting power of another person in a statewide election merely because he lives in a rural area or because he lives in the smallest rural county?" *Gray v. Sanders*, 372 U.S. 368, 379, 83 S. Ct. 801, 808, 9 L. Ed. 2d 821 (1963). Allowing the voters of other wards to influence the elections within other wards dilutes the power of the voters in small wards by those of larger populated wards.

Plaintiff further alleges, "The Court has held that states have a vital and compelling interest in requiring "political parties appearing on the general ballot [to] demonstrate a significant, measurable quantum of community support." This preliminary demonstration of a "significant modicum of support" furthers the state's legitimate interest of "avoiding confusion, deception, and even frustration of the democratic process at the general election." *Jenness v. Fortson,* 403 U.S. 431, 442, 91 S.Ct. 1970, 1976, 29 L.Ed.2d 554 (1971). *Libertarian Party of Illinois v. Rednour*, 108 F.3d 768, 774 (7th Cir. 1997). By

9

creating such a variable rate amongst the community the State cannot have a compelling interest because the measurable quantum is not actually based on community support but rather the votes for the mayor outside the community (ward) which set the benchmark requirement of 472 votes.

Candidate further asserts that the amount of vote's candidate presented satisfies the prior 2% rule based on the number of voters in the 2011 election within the ward. Candidate asserts that his current signature amounts are a significant modicum of support and he is therefore in substantial compliance with the intent and provisions of the election code and that the Defendant has no basis to deny his access to the ballot.

Defendant State of Illinois passed this ordinance, which resulted in the constitutional deprivation to Plaintiff. The Defendant's municipal policy is the moving force behind the constitutional deprivation in that the Statute and its enforcement is the vehicle for denying access to the ballot and violating the Plaintiff's rights to run and an equal vote. Defendants continue to deny Plaintiff access to the ballot and continue to deny Plaintiff his constitutional rights.

Wherefore, Plaintiff requests this Honorable Court for the following relief:

1. Order the Defendants to grant Plaintiff access to the Ballot by placing his name on the ballot
2. Enjoin the Defendants from denying the Plaintiff his right to have his name placed on the ballot
3. Find the Statute Violative of the Constitution
4. Reasonable Attorneys fees, costs, and any other relief the Court sees fit to be awarded to Plaintiff
5. Damages in excess of $100,000.00 for violations of the Plaintiff's Constitutional rights.

/S/ Ilia Usharovich
Ilia Usharovich
224 South Milwaukee Avenue
Suite G
Wheeling, Illinois 60090
Telephone: 847-264-0435
Facsimile: 224-223-8079
Email: Ilia@Usharolaw.com
Attorney:6302193