IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| VINCENT ROSE, )<br>)<br>      Plaintiff, )<br>)<br>  v. )<br>BOARD OF ELECTION )<br>COMMISSIONERS FOR THE CITY OF )<br>CHICAGO, et al., )<br>)<br>      Defendants. ) | No.: 15-cv-000382<br><br>Judge Amy St. Eve |

**BOARD OF ELECTION COMMISSIONERS FOR THE CITY OF CHICAGO'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

## I. BACKGROUND

Plaintiff Rose challenges the constitutionality of an Illinois statute prescribing the minimum number of signatures required on nominating petitions for candidates for the office of Alderman of the 7th Ward of the City of Chicago at the February 24, 2015 Municipal General Election in the city of Chicago.

In the city of Chicago, Aldermen in each of the City's 50 wards are elected in nonpartisan elections. No political party affiliation is permitted for candidates for Mayor, City Clerk, City Treasurer or Alderman. *See*, 65 ILCS 20/21-5, 20/21-12, 20/21-32. The candidate receiving a majority of the votes cast for each such office at the election held quadrennially in February of odd-numbered years is declared elected; however, if no candidate receives a majority of the votes cast in such election, a runoff election is held in April of such year when only the names of the candidate receiving the highest and second highest number of votes at the February election shall appear on the ballot. *See*, 65 ILCS 20/21-22, 20/21-25 and 20/21-26; 10 ILCS 5/2A-1.1(b) and 5/2A-1.2(d). The candidate receiving the highest number of votes at the April runoff election is elected. Id.

In Chicago, nominating petitions for candidates for Alderman must be signed by the

number of legal voters of the ward as will aggregate not less than 4% of the total number of votes cast for Alderman in such ward at the last preceding general election. *See*, 65 ILCS 20/21-28(a), as amended by P.A. 98-115, eff. July 29, 2013. Prior to 2013, the statute provided an aggregate signature requirement of 2%.

However, since the last election for Alderman in 2011, the Chicago City Council redistricted ward boundaries in the city.[1] For an election following the redistricting of wards the legislature has prescribed a different test – petitions for nominations of candidates shall be signed by the number of legal voters of the ward as will aggregate not less than 4% (formerly 2%) of the total number of votes cast for mayor at the last preceding municipal election divided by the number of wards. Id. At the last preceding municipal election (February 22, 2011), 590,391 votes were cast for Mayor. Four percent (4%) of 590,391 is 23,615.64, which, divided by the number of wards (50), yields a minimum signature requirement of 472.3128, or, rounded up, 473. Therefore, for a candidate for the office of Alderman in any Ward of the City of Chicago, nominating petitions must contain not less than 473 signatures of legal voters of the Ward.

Candidates for Alderman had 90 days prior to the last day of petition filing to circulate nominating petitions to obtain the signatures of legal voters in their respective wards. *See*, 10 ILCS 5/10-4. The last day to file nomination papers for the office of Alderman was November 24, 2014. *See*, 10 ILCS 5/10-6(4). The first day to begin circulating nominating petition sheets

---

[1] The Chicago City Council is required, "On or before the first day of December, of the year following the year in which the national census is taken, and every ten years thereafter," to redistrict the city on the basis of the national census of the preceding year. 65 ILCS 20/21-38. Indeed, on January 19, 2012 the Chicago City Council adopted a Ward Redistricting Ordinance. *See* SO2012-582; see also, *Journal of the Proceedings of the City Council of the City of Chicago, Illinois*, January 19, 2012, pp. 19782-19849. On September 12, 2012, the City Council approved corrections to the ward boundaries. See, *Journal of Proceedings*, September 12, 2012, p. 33628.

In *League of Women Voters v. City of Chicago*, 757 F.3d 722 (7th Cir. 2014), the U.S. Seventh Circuit of Appeals found that the Chicago City Council's 2012 redistricting ordinances and maps did not violate the Equal Protection Clause principle of "one person, one vote," which requires that officials be elected from voting districts with substantially equal populations. While the government must make "an honest and good-faith effort" to construct its districts as nearly of equal population as is practicable," mathematical precision is not required. 757 F.3d at 725.

was, therefore, August 26, 2014.

On November 18, 2014, Plaintiff Vincent Rose filed with Defendant Board of Election Commissioners for the City of Chicago (the "Board") his nomination papers, including nominating petitions, seeking to be placed on the ballot as a candidate for Alderman of the 7th Ward of the City of Chicago in the municipal general election to be held on February 24, 2015. A copy of his nomination papers is attached hereto as Exhibit 1.

Rose's nomination paper were met with two objections from registered voters in the 7th Ward. See, 10 ILCS 5/10-8. Both objections alleged that Rose did not meet the signature requirements for candidate petitions for Alderman of the 7th Ward and did not qualify to appear on the ballot.

In one case (15-EB-ALD-109, Chicago Electoral Bd. Jan. 15, 2015), the Board, acting as the duly constituted Electoral Board (see, 10 ILCS 5/10-9(6)), found that Rose's petitions contained 1,076 purportedly valid signatures of legal voters of the 7th Ward. However, objections to 662 of those signatures were sustained, leaving Rose with only 414 valid signatures, below the minimum signature requirement of 473. See, Exhibit 2.

In the other case (15-EB-ALD-163, Chicago Electoral Bd. Jan. 15, 2015), the hearing officer concluded that twelve of Rose' petition sheets – sheets 41 through 46, 48, 50, and 52 through 55 – which were purportedly circulated by Rose, contained signatures "either entirely or substantially of common authorship" that exhibited evidence of a pattern of fraud and false swearing sufficient to warrant striking all petition sheets circulated by Rose. The hearing officer found other problems as well with Rose's nominating petition sheets, but ultimately concluded that the outcome in 15-EB-ALD-109, which found Rose's nomination papers invalid, was controlling. See, Exhibit 3.

On January 20, 2015, Rose filed for judicial review of the Board's decisions in both cases with the Circuit Court of Cook County, Illinois, pursuant to 10 ILCS 5/10-10.1. These cases were consolidated for hearing. Rose's principal claim was that the Illinois statute found at 65 ILCS 20/21-28(a) requiring that candidates for the office of Alderman in the City of Chicago for the February 24, 2015 election, the first election following the 2012 redistricting of wards in Chicago, present nominating petitions signed by a number of legal voters of the ward not less than 4% of the number of votes for mayor at the last preceding municipal election divided by the number of wards is unconstitutional and violates federal law. Specifically, Plaintiff Rose alleged that he was wrongfully denied access to the February 24, 2015 aldermanic election ballot in the 7th Ward of the City of Chicago because 65 ILCS 20/21-28(a) violates sections 52 U.S.C.A. § 10301 (formerly 42 U.S.C. § 1973) and 52 U.S.C.A. § 10101 (formerly 42 U.S.C. § 1971) of the Voting Rights Act. Rose also claimed that the 4% signature requirement violated his right to free speech and freedom of association under the First Amendment to the U.S. Constitution and well as the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. Rose also brought a secondary claim alleging that he was not provided a hearing in a meaningful time and manner in violation of the Due Process Clause.

On February 3, 2015, the Circuit Court of Cook County entered judgment on the merits denying the petitions for judicial review and affirming the decisions of the Board. See, Exhibit 4. In so holding, the court considered and rejected all of the same constitutional claims raised in the instant case before this Court. Specifically, the circuit court, after evaluating whether the 4% signature requirement infringed plaintiff's First Amendment rights by applying the balancing test derived from *Anderson v. Celebrezze*, 460 U.S. 7680 (1983) and its progeny, *Burdick v. Takushi*, 504 U.S. 428 (1992) and *Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997), found

that the 4% signature requirement "is a reasonable, nondiscriminatory restriction that in necessary for the City of Chicago to effectively administer a municipal election." Exhibit 4, p. 4. As for Rose's claim that the 4% signature requirement, as applied to elections following a redistricting, creates fifty different standards and discriminates against minorities, the circuit court held that the uniform formula in 65 ILCS 20/21-28(a) provides an equal number for all 50 wards (473) and there was no equal protection violation. Id. The circuit court further found that Rose's "bald allegation" that the 4% formula is "discriminatory against minorities" is "without any evidentiary support." Id.

The circuit court also ruled that Rose's claims that 65 ILCS 20/21-28(a) violated 52 U.S.C.A. §§ 10301 and 10101 also failed. Exhibit 4, p. 5. The circuit court found that plaintiff had no standing to bring a claim under Section 10301 of the Voting Rights Act because his purported injury stemmed from a failure to qualify for the ballot, not a prohibition on his ability to vote, citing *Roberts v. Wamser*, 883 F.2d 617, 621 (6th Cir. 1989). Id. The circuit court also held that Section 10101 relates to voting standards and casting ballots, not candidates seeking access to the ballot, and affords Rose no basis for relief, citing *Thrasher v. Illinois Republican Party*, 2013 WL 442832 (C.D. Ill. 2013).

Finally, the circuit court addressed Rose's claim that his procedural process rights were violated because "he was not provided a hearing in a meaningful time and manner," holding that he waived his argument by failing to raise it in his petitions and, without any citation to the record, the court had no idea what he was referencing. Exhibit 4, p. 5.

Rose did not file a timely notice of appeal within 30 days as required by Illinois Supreme Court Rule 303(a)(1). Hence the February 3, 2015 judgment of the Circuit Court of Cook County constitutes a final judgment on the merits. Rose's name was not printed on the ballot for the

February 24, 2015 election in the 7th Ward.

At the February 24, 2015, no candidate in the 7th Ward Aldermanic election received a majority of votes cast for Alderman in that ward and, pursuant to 65 ILCS 20/21-26, a runoff supplementary election will be conducted on April 7, 2015 listing on the ballot only the names of the two candidates receiving the highest and second highest number of votes at the February 24, 2015. The candidate receiving the most votes on April 7 will be declared elected as Alderman of the 7th Ward.

Plaintiff seeks to stay the April 7 runoff election in the 7th Ward and seeks an order directing the Board to place Plaintiff's name on the April 7 supplementary election ballot.

## II. LEGAL STANDARD FOR MOTION TO DISMISS

When considering a motion to dismiss, the court must accept all well-pleaded factual allegations in the claim as true, and draw all reasonable inferences in favor of the plaintiff. *Killingsworth v. HSBC Bank Nevada,* 507 F.3d 614, 618 (7th Cir. 2007) (*citing Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964 (2007)). To survive a Rule 12(b)(6) motion to dismiss, the claim must first comply with Rule 8(a) by providing a short and plain statement of the claim showing that the pleader is entitled to relief such that the defendant is given fair notice of what the claim is and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2). Second, a court may grant a motion to dismiss under Rule 12(b)(6) only if the complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Id.* at 618-619; *E.E.O.C. v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776-77 (7th Cir. 2007) (*citing Twombly,* 550 U.S. at 570). In order to survive a motion to dismiss for failure to state a claim, the plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.

"Detailed factual allegations" are not required, but to survive a motion to dismiss the

plaintiff must allege facts that, when "accepted as true, * * * 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (*quoting Twombly,* 550 U.S. at 555). "After *Twombly* and *Iqbal*, a plaintiff to survive dismissal 'must plead some facts that suggest a right to relief that is beyond the speculative level'." *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

"Determining whether a complaint states a plausible claim for relief will *** be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief'." *Id.*, *citing* Fed. R. Civ. P. 8(a)(2).

The court may consider documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in briefs opposing dismissal so long as those additional facts consistent with the pleadings. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 (7th Cir. 2012). Orders entered and findings made in other courts are subject to judicial notice on a Rule 12(b)(6) motion. *See*, *Cancer Found., Inc. v. Cerberus Capital Mgmt. LP*, 559 F.3d 671, 676 n.2 (7th Cir. 2009); *Unites States v. Stevens*, 500 F.3d 625, 628 n.4 (7th Cir. 2007). Courts may take judicial notice of matters of public record on a motion to dismiss. *Johnson v. City of Kankakee, Ill.*, 397 Fed.Appx. 238, 240 (7th Cir. 2010); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

### III. RES JUDICATA

Res judicata provides for the finality of rulings by barring the relitigation of claims or defenses that had been or could have been brought in a prior case. *See, Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 471 (7th Cir. 2007). Under the Full Faith and Credit Act, federal courts give

state court judgments the same preclusive effect they would have in state court. 28 U.S.C. § 1738; *Licari v. City of Chicago*, 298 F.3d 664, 666 (7th Cir. 2002). Because the underlying judgment in this case was issued by an Illinois state court, its preclusive effect is governed by Illinois law. *See*, *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 373 (1996); *Burke v. Johnston*, 452 F.3d 665, 669 (7th Cir. 2006).

In Illinois, res judicata applies if: (1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies. " *River Park Inc. v. City of Highland Park*, 703 N.E.2d 883, 889 (Ill. 1998); *Empress Casino Joliet Corp. v. Johnson*, 763 F.3d 723, 727-28 (7th Cir. 2014). The party against whom res judicata is invoked must have a "full and fair" opportunity to litigate the claim in the prior suit. *Hicks*, 479 F.3d at 471.

 A. <u>Circuit Court Order Denying Petition for Judicial Review was a Final Judgment on the Merits</u>

On January 20, 2015, Rose, pursuant to Illinois statute (10 ILCS 5/10-10.1), filed with the Circuit Court of Cook County, Illinois, petitions for judicial review of the Board's decisions in both objections filed against his nomination papers cases. These cases – 2015 COEL 000011 and 2015 COEL 000012 – were consolidated and on February 3, 2015, the Circuit Court of Cook County entered judgment on the merits denying the petitions for judicial review and affirming the decisions of the Board. See, Exhibit 4. As a result, Rose's name was not printed on the ballot for the February 24, 2015 election in the 7th Ward.

Rose did not file a timely notice of appeal within 30 days as required by Illinois Supreme Court Rule 303(a)(1). Hence the February 3, 2015 judgment of the Circuit Court of Cook County constitutes a final judgment on the merits.

B. There is an Identity of Cause of Action

To evaluate whether an identity of causes of action exist, Illinois courts use a transactional test under which separate claims are considered the same cause of action if they arise from a "single group of operative facts, regardless of whether they assert different theories of relief." *River Park, Inc. v. City of Highland Park*, 184 Ill.2d 290, 311 (1998). Illinois does not require the same evidence or an identical theory of relief. *Cooney v. Rossiter*, 986 N.E.2d 618, 622 (2012).

In its February 3, 2015 judgment, the Circuit Court of Cook County considered and rejected *all* of the same constitutional claims raised in the instant case before this Court.

Count I of Plaintiff's First Amended Complaint for Relief ("FAC") claims that 65 ILCS 20/21-28(a) violates 52 U.S.C.A. § 10301 of the Voting Rights Act. FAC, pp. 8-10. The circuit court held that the Plaintiff had no standing to bring a claim under this section because his purported injury stemmed from a failure to qualify for the ballot, not a prohibition on his ability to vote, citing *Roberts v. Wamser*, 883 F.2d 617, 621 (6th Cir. 1989). See, Exhibit 4, p. 5.

Count II of Plaintiff's First Amended Complaint claims that 65 ILCS 20/21-28(a) violates 52 U.S.C.A § 10101. FAC, p. 11. The circuit court rejected this claim, holding that Section 10101 relates to voting standards and casting of ballots, not candidates seeking access to the ballot, citing *Thrasher v. Illinois Republican Party*, 2013 WL 442832 (C.D. Ill. 2013). See, Exhibit 4, p. 5.

Count III of the First Amended Complaint claims that 65 ILCS 20/21-28(a) violates Plaintiff's right to free speech and freedom of association under the First Amendment of the Unites States Constitution. FAC, pp. 11-19. The circuit court ruled that under the balancing test derived from *Anderson v. Celebrezze*, 460 U.S. 7680 (1983) and its progeny, *Burdick v. Takushi*, 504 U.S. 428 (1992) and *Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997), the 4%

9

signature requirement did not infringe plaintiff's First Amendment rights, finding that the 4% signature requirement "is a reasonable, nondiscriminatory restriction that in necessary for the City of Chicago to effectively administer a municipal election." See, Exhibit 4, p. 4.

Count IV of the First Amended Complaint claims that 65 ILCS 20/21-28(a) violates the Equal Protection, contending that there is no rationale, compelling or other proper basis for the alleged 50 different variable amounts of signatures. FAC, pp. 20-21. The circuit court held that the uniform formula in 65 ILCS 20/21-28(a) provides an equal number for all 50 wards (473) and there was no equal protection violation. See, Exhibit 4, p. 4. The circuit court further found that Rose's "bald allegation" that the 4% formula is "discriminatory against minorities" is "without any evidentiary support." Id.

Count V of the First Amended Complaint claims that there was a Due Process violation because "he was not provided a hearing in a meaningful time and manner," alleging that records examinations were conducted prior to the Board's updating of voter registration records and the results of the records examination were, therefore, not accurate and such hearing was not meaningful because records used to compare signatures were not available. FAC, p. 21. The circuit court addressed this claim by holding that Rose waived his argument by failing to raise it in his petitions and, without any citation to the record, the court had no idea what he was referencing. Exhibit 4, p. 5. While Rose may attempt to argue that the circuit court did not fully address his due process claim in the state court, res judicata still bars this claim because he had a full and fair opportunity to litigate the claim in the prior suit and res judicata bars claims that had been *or could have been brought* in a prior case. *Hicks*, 479 F.3d at 471.

Finally, Count VI of the First Amended Complaint claims a violation of civil rights under Section 1983. Rose does not cite any specific facts or legal argument in support of his Count VI;

rather, his one sentence claim "cites to and incorporates within this count all counts, statements, and exhibits, to support his claim for the Defendant's violation of Plaintiff's Civil Rights." FAC, p. 22. This is not surprising, since Section 1983 merely provides a mechanism for enforcing individual rights "secured" elsewhere, *i.e.,* rights independently "secured by the Constitution and laws" of the United States. "[O]ne cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything." *Gonzaga University v. Doe*, 536 U.S. 273, 285, 122 S.Ct. 2268, 2276 (2002), quoting *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 617, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979).

And while State courts as well as federal courts have jurisdiction over Section 1983 cases, (*see*, *Howlett by and Through Howlett v. Rose*, 496 U.S. 356, 358, 110 S. Ct. 2430, 2433, 110 L. Ed. 2d 332 (1990)), Rose did not bring a specific Section 1983 count or claim in his state court action. Thus, the circuit court did not specifically address Section 1983 in its February 3, 2015 judgment. That is inconsequential, however, as Section 1983 is simply a mechanism for enforcing individual rights "secured" elsewhere in the Constitution and laws of the United States. What is important for purposes of res judicata is that the prior state court judgment adjudicated each and every one of the substantive claims Rose brought under the Constitution and federal laws as set out in his First Amended Complaint filed with this Court.

Here, the present action in this Court arises from the same set of facts as the cause of action raised in the State court – i.e., the Plaintiff's nominating petitions with insufficient valid signatures under the challenged statute – 65 ILCS 20/21-28(a) – and the Board's decisions holding that the Plaintiff's nomination papers were invalid under said statute. The operative facts and the theories of relief (although Plaintiff added Illinois Constitutional claims in the state court action) are same in both this action and in the State court action.

11

Here, it is clear that Plaintiff had a full and fair opportunity to litigate and did, in fact, litigate in the Illinois court all of the federal claims he now attempts to litigate in the instant action. Therefore, there is identity of a cause of action such that the second requirement for invoking res judicata is satisfied and such action and claims are barred.

### C. There is an Identity of Parties or their Privies

The third requirement of res judicata, the identity of parties or their privies, is clearly satisfied in this case. Vincent Rose was the plaintiff in the State court actions and he is the Plaintiff in this cause as well. He seeks to vindicate his perceived right to be a candidate on the ballot for the election for 7th Ward Alderman in both cases. Defendants Board of Election Commissioners for the City of Chicago, and Commissioners, Langdon D. Neal, Richard A. Cowen and Marisel A. Hernandez are defendants in both cases. The State of Illinois, by Lisa Madigan, Attorney General, is named as defendant in both cases.

While the objectors to Vincent Rose's nomination papers in the State court proceedings – Michael Anderson and William Taylor – are not named in the instant case, their presence is neither necessary nor does their absence affect the identity of parties as between Rose and the other defendants in this case such to preclude the application of res judicata.

Even if Rose attempts to add additional parties in this case, his claims against the Defendants named herein are barred and he is precluded from relitigating them.

### CONCLUSION

For the reasons discussed above, the Plaintiff's claims in his First Amended Complaint are barred from being relitigated because a State of Illinois court of competent jurisdiction has entered a final judgment on the merits of the same claims raised in the First Amendment Complaint, there is identity of the parties or their privies and there is an identity of cause of

action. Therefore, the Board respectfully requests this Court to dismiss this action under the doctrine of res judicata.

          Respectfully submitted,

          Board of Election Commissioners for the City of Chicago, Langdon D. Neal, Marisel A. Hernandez, and Richard A. Cowen, Defendants

          By:      /s/ James M. Scanlon
                    Their attorney

James M. Scanlon
James M. Scanlon & Associates, P.C.
27 N. Wacker Dr. #502
Chicago, IL 60606
Tel. (312) 782-8163