IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VINCENT ROSE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-cv-382 |
| | ) | |
| BOARD OF ELECTION COMMISSIONERS FOR THE CITY OF CHICAGO, et al., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Vincent Rose ("Rose" or "Plaintiff") has filed a motion for a preliminary injunction [7]. Defendants State of Illinois and the Board of Election Commissioners for the City of Chicago, including individual Defendants Langdon D. Neal, Richard A. Cowen, and Marisel A. Hernandez (the "Board of Elections"), have each filed motions to dismiss Plaintiff's Amended Complaint [13], [17]. For the following reasons, the Court denies Plaintiff's motion, and grants Defendants' motions with prejudice.

## BACKGROUND

Plaintiff filed this action against the Board of Elections and the State of Illinois. The facts are largely undisputed. Plaintiff filed petitions for nomination as a candidate for Alderman in the Seventh Ward of the City of Chicago. (R. 5, Am. Compl., at 6.) After two objectors, Michael Anderson and William Taylor, filed objections to Plaintiff's nomination petitions, the Board of Elections conducted two records examinations and hearings, one for each respective

1

objection. *Id*. Following the hearing on the Taylor objection, the Board of Elections ruled that Plaintiff could not be placed on the ballot because he only submitted 414 valid signatures, short of the required 473.[1] (R. 17-5, Board of Election Findings, at 4.)[2] In the later Anderson decision, the hearing officer found that the ruling on the Taylor objection controlled the outcome of the Anderson objection. (R. 14-2, Ex. D, Cook County Opinion, at 1.)

Rose then filed petitions for judicial review in the Circuit Court of Cook County challenging the rulings by the Board of Elections, which were consolidated into one case (the "Cook County Action.") (R. 14-2, Ex. D, Cook County Opinion, at 1.) Rose's initial petition in the Cook County Action challenged the four percent (4%) signature requirement for nominations of aldermanic candidates on First Amendment, equal protection, and due process grounds. (*Id*. at 3.) Rose later filed an "Amended Memorandum of Law in Support of Plaintiff's Position" (the "Amended Memo") which raised new legal theories not in his original petition, including claims under the Voting Rights Act, 52 U.S.C. §§ 10301 and 10101, and several other claims under the United States and Illinois Constitutions. (R. 14-2, Ex. C., Am. Memo.) In an opinion dated February 3, 2015, the Hon. Maureen Ward Kirby of the Circuit Court of Cook County ("Cook County Circuit Court") denied Plaintiff's petitions for judicial review (the "Cook County Opinion") and rejected the additional arguments in his Amended Memo. (R. 14-2, Ex. D, Cook County Opinion.) Rose did not appeal that decision, and Defendants argue that the thirty days he had to do so under Illinois Supreme Court Rule 303(a)(1) have since passed.

---

[1] Nominations for alderman in Chicago are by petition. 65 ILCS 20/21-28(a). In the first election following a redistricting of wards (which is the case in the 2015 election), the number of required signatures on a nominating petition is calculated by taking four percent (4%) of the total number of votes cast for city mayor at the last mayoral election, and dividing that number by 50 (the number of wards in Chicago). *Id*. For the 2015 election, that yields a requirement of 473 signatures for a nominating petition of an aldermanic candidate. (R. 5, Am. Compl., at 6-7.)

[2] The Court may properly take judicial notice of matters of public record when ruling on a motion to dismiss. *See Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012) (approving of the district court taking judicial notice of "facts readily ascertainable from the public court record and not subject to reasonable dispute" when ruling on a motion to dismiss.)

Rose filed this action on January 15, 2015, and filed his Amended Complaint on February 25, 2015. On March 8, 2015, he filed the current motion for preliminary injunction. Defendants filed the pending motions to dismiss on March 17, 2015. They move to dismiss Rose's Amended Complaint under Rule 12(b)(6) on the basis that the doctrine of claim preclusion bars Rose's claims because the Cook County Circuit Court already denied them in a final judgment on the merits.[3] Rose responded to Defendants' motions on March 24, 2015.[4] Meanwhile, the Seventh Ward held its election for Alderman on February 24, 2015 (the "February 2015 Election"). (R. 17-1, Board of Elections Memo, at 6.) Rose was not listed on the ballot. Because no candidate received a majority of the votes, the Seventh Ward will conduct a runoff election on April 7, 2015 (the "April 2015 Election"). *Id*. The April 2015 Election ballot for Seventh Ward Alderman will only list the names of the two candidates for Alderman in the Seventh Ward who received the highest vote totals in the February 2015 Election. *Id*. The candidate who receives the highest vote total in the April 2015 Election will then be elected Alderman. *Id*. Because Rose's name was not on the February 2015 Election ballot, among other relief, he requests that the Court stay the April 2015 Election until his name can be placed on the ballot.

## LEGAL STANDARD

### I. Preliminary Injunction

"A preliminary injunction is an extraordinary remedy intended to preserve the status quo until the merits of a case may be resolved." *Ind. Civil Liberties Union v. O'Bannon,* 259 F.3d

---

[3] Defendant State of Illinois also moves to dismiss the Amended Complaint on the grounds that the State of Illinois is not a proper defendant, Rose lacks standing to bring his claims under the Voting Rights Act, and the four percent signature requirement is constitutional.

[4] Defendants' replies in support of their motions to dismiss are currently due April 2, 2015. (R. 18.) The Court finds that it does not need this additional briefing in order to rule on Defendants' motions.

766, 770 (7th Cir. 2001). "A preliminary injunction is a very serious remedy," and it is "never to be indulged in except in a case clearly demanding it." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1044 (7th Cir. 2000) (internal quotation omitted). To succeed on a motion for a preliminary injunction, a party must show that (1) he has some likelihood of success on the merits; and (2) he has no adequate remedy at law and will suffer irreparable harm if the court does not grant the preliminary injunction. *See Ezell v. City of Chicago,* 651 F.3d 684, 694 (7th Cir. 2011) (citations omitted). With respect to the first factor, "the threshold for establishing likelihood of success is low." *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 782 (7th Cir. 2011).

If the moving party demonstrates the above factors, "the district court weighs the factors against one another, assessing whether the balance of harms favors the moving party or whether the harm to the nonmoving party or the public is sufficiently weighty that the injunction should be denied." *Ezell,* 651 F.3d at 694 (citing *Christian Legal Soc'y v. Walker,* 453 F.3d 853, 859 (7th Cir. 2006)). "In this balancing of harms conducted by the district court, the court weighs these factors against one another 'in a sliding scale analysis.'" *Stuller, Inc. v. Steak N Shake Enters., Inc.*, 695 F.3d 676, 678 (7th Cir. 2012) (quoting *Christian Legal Soc'y*, 453 F.3d at 859). "The sliding scale approach is not mathematical in nature, rather it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id*. (quoting *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895-96 (7th Cir. 2001)).

## II.  Motions to Dismiss for Claim Preclusion

Since claim preclusion is an affirmative defense, "the proper procedure is to raise the defense and then move for judgment on the pleadings under Rule 12(c) of the Federal Rules of

4

Civil Procedure." *Walczak v. Chicago Bd. of Educ.*, 739 F.3d 1013, 1016 n.2 (7th Cir. 2014); *Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010). Although Defendants bring their motions under Rule 12(b)(6), Plaintiff does not object on that ground, and "the error is of no consequence" because the Court has all that it "need[s] in order to be able to rule on the defense." *Carr*, 591, F.3d at 913. Further, "[a] Rule 12(c) motion is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 639 (7th Cir. 2015).

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 12(b)(6), a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true," *Alam v. Miller Brewing Co.,* 709 F.3d 662, 665–66 (7th Cir. 2013), and draw "reasonable inferences in favor of the plaintiffs." *Teamsters Local Union No. 705 v. Burlington N. Santa Fe, LLC,* 741 F.3d 819, 823 (7th Cir. 2014).

## ANALYSIS

### I. Merits of Defendants' Motions to Dismiss

The Court first examines the merits of Defendants' motions to dismiss. For the reasons explained below, the Court grants Defendants' motions. Accordingly, the Court also finds that Rose has no likelihood of success on the merits of his preliminary injunction motion.

As discussed above, Rose asserted nearly identical claims in the Cook County Action, in which he sought judicial review of two decisions of the Board of Elections, and challenged the Illinois state statutory framework for submitting nominating petitions for alderman on statutory and constitutional grounds. The Cook County Circuit Court rejected Rose's arguments, denied Rose's petitions for judicial review, and affirmed the decisions of the Board of Elections. (R. 14-2, Ex. D, Cook County Opinion.) Thus, the Court analyzes Defendants' argument that the doctrine of claim preclusion bars Rose's claims in this action.[5]

The Court applies the preclusion law of Illinois because that is the state that rendered the underlying judgment. *See Arlin-Golf, LLC v. Vill. of Arlington Heights*, 631 F.3d 818, 821 (7th Cir. 2011). "Illinois claim-preclusion law has three basic requirements: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of the causes of action; and (3) an identity of parties or their privies." *Dookeran v. Cnty. of Cook, Ill.*, 719 F.3d 570, 575 (7th Cir. 2013). With respect to the second element, whether there is an identity of the causes of action, "Illinois has adopted the 'transactional' analysis, which looks to see if the claims 'arise from a single group of operative facts, regardless of whether they assert different theories of relief.'" *Id.* (quoting *Arlin-Golf, LLC*, 631 F.3d at 821). "The transactional test permits claims to be considered part of the same cause of action even if there is not a substantial overlap of evidence, so long as they arise from the same transaction." *Id.*

"As a corollary to the transactional rule, Illinois adopted the doctrine of merger and bar which precludes the sequential pursuit not only of claims actually litigated, but of those that could have been litigated." *Garcia v. Vill. of Mount Prospect*, 360 F.3d 630, 639 (7th Cir. 2004). "This principle, however, is bounded by the Due Process Clause of the Fourteenth Amendment,

---

[5] Because the Court grants Defendants' motions on this basis, it does not address the other arguments raised by the State of Illinois in its motion to dismiss.

which overrides the otherwise preclusive effect of a prior judgment if the [plaintiff] did not have a full and fair opportunity to litigate his claim in the prior action." *Dookeran*, 719 F.3d at 576 (quotation omitted).

### A. Cook County Action

The Court first compares Rose's action here to the Cook County Action, then addresses Rose's myriad arguments for why claim preclusion should not apply to bar this suit. In this case, Rose alleges the following six claims against Defendants: 1) violation of the Voting Rights Act (52 U.S.C. § 10301); 2) violation of the Voting Rights Act (52 U.S.C. § 10101); 3) violation of Rose's right to free speech and freedom of association; 4) violation of equal protection; 5) violation of due process; and 6) violation of Rose's civil rights under section 1983. In the Cook County Action, which Rose brought against each of the Defendants here,[6] Rose made the first five of these arguments. (R. 14-2, Ex. C, Am. Memo.) The Cook County Opinion directly addressed the first four of them, and rejected them in a final judgment on the merits.[7] (R. 14-2, Cook County Opinion.) Rose did not appeal that decision, and he does not contest Defendants' argument that the time to do so under Illinois Supreme Court Rule 303(a)(1) has expired. Accordingly, the doctrine of claim preclusion bars these claims. As explained below, the doctrine of claim preclusion also bars Rose's fifth claim for due process, and the sixth claim for a violation of 42 U.S.C. § 1983, which Rose did not assert in the Cook County Action but asserts here.

---

[6] Rose brought the Cook County Action against each of the Defendants here in addition to Michael Anderson and William Taylor, who were the two objectors to Rose's nominating petitions.

[7] The Cook County Opinion ultimately ordered as follows: "The Petitions for Judicial Review are Denied and the Decisions of the Electoral Board dated January 15, 2015 are affirmed. The name of Vincent Rose shall not be printed on the February 24, 2015 ballot as a candidate for the office of Seventh Ward Alderman of the City of Chicago." (R. 14-2, Cook County Opinion, at 6.)

In the first claim in his Amended Complaint in this case, Rose asserts "that the political processes leading to nomination or election in the State or political subdivision of alderman are not equally open to participation by minority class of citizens protected by 52 U.S.C.A. § 10301." (R. 5, Am. Compl., at 9.) He made this same argument in the Cook County Action in his Amended Memo, asserting in "Legal Issue 1" that "the political processes leading to nomination or election in the State or Political subdivision of alderman are not equally open to participation by minority class of citizens protected by 52 U.S.C.A. § 10301." (R. 14-2, Ex. C, Am. Memo, at 4.)

In his second claim, Rose alleges that the political processes he references in the first claim result in "the denial to such minority voters and candidates of equal access to the ballots and equal power of votes." (R. 5, Am. Compl., at 11.) Again, he made this same argument in the Cook County Action in his Amended Memo, asserting in "Legal Issue 2" that these political processes result in "the denial to such minority voters and candidates of equal access to the ballots and equal power of votes." (R. 14-2, Ex. C, Am. Memo, at 8.)

The Cook County Opinion rejected both of these claims, reasoning as follows:

> Plaintiff has no standing to bring a claim under Section 10301 of the federal voting rights act because his purported injury stems from a failure to qualify for the ballot, not a prohibition on his ability to vote. These federal laws relate to voting standards and casting ballots, they do not relate to candidates seeking access to the ballot. Section 10101 relates to voting standards and casting ballots, not candidates seeking access to the ballot. These sections of the voting rights act afford plaintiff no basis for relief.

(R. 14-2, Ex. D, Cook County Opinion, at 5) (citation omitted).

In his third claim, Rose alleges that the Illinois statute imposing the signature requirement for aldermanic nominations, 65 ILCS § 20/21-28, violates his First Amendment rights. Specifically, he argues that the enforcement of this statute "is the vehicle for denying access to the ballot and violating the Plaintiff's rights to run and an equal vote," and that under the

8

balancing test articulated in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), the character and magnitude of the injury to Plaintiff's First Amendment rights is not justified by a narrowly tailored, compelling state interest. (R. 5, Am. Compl., at 12-13.) Plaintiff made the same argument in his Amended Memo, asserting in "Count 3" that the enforcement of § 20/21-28 "is the vehicle for denying access to the ballot and violating the Plaintiff's rights to run and an equal vote," and that under the balancing test articulated in *Anderson v. Celebrezze*, "the character and magnitude of the asserted injury" to Plaintiff's First Amendment rights is "not justified by a compelling interest" that is narrowly tailored. (R. 14-2, Ex. C, Am. Memo, at 9-10.)

The Cook County Circuit Court also rejected that argument, stating as follows:

> When evaluating whether a state law infringes a First Amendment right, courts apply the balancing test derived from Anderson v. Celebrezze, 460 U.S. 780 (1983) … Under this test, courts weigh the "character and magnitude" of the burden imposed by the State's rule against the interests the State contends justify the burden. "When a state election law provision imposes only reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of voters, the State's regulatory interests are generally sufficient to justify the restrictions." Burdick, 504 U.S. at 434 (internal citations and quotes omitted). Illinois courts have applied the same framework in judging the constitutionality of ballot access restrictions…
>
> The signature requirement for aldermanic elections is clearly within the bounds of law. A similar attack on the statutory signature requirements for the city wide candidates running for Mayor of Chicago was raised in Stone v. Board of Election Commissioners, 750 F.3d 678 (7th Cir. 2014). In that case, the Seventh Circuit found the 12,500 signature requirement for city wide office was constitutional as it served the "important, interrelated goals of preventing voter confusion, blocking frivolous candidates from the ballot, and otherwise protecting the integrity of elections." Id at 685. Moreover, a uniform standard is applied to every ward in the City of Chicago and the court believes this four percent signature requirement is a reasonable, nondiscriminatory restriction that is necessary for the City of Chicago to effectively administer a municipal election.

(R. 14-2, Ex. D, Cook County Opinion, at 4.)

In his fourth claim in the Amended Complaint, Rose alleges an equal protection violation, arguing "that there is no rationale [sic], compelling, or other proper basis for the different treatment of the class of aldermanic candidates and voters in that allowing some

9

candidates to access the ballot or voters their choice of candidate with only 1.9% of the signatures and providing for 50 different variable amounts of signature is not rationale [sic], is discriminatory, unnecessary, and violative of equal protection." (R. 5, Am. Compl., at 20.) Rose made the same argument in "Count Four" of his Amended Memo, which the Circuit Court rejected, stating that:

> Rose also argues that as applied Section 21-28(a) creates fifty different standards for the minimum signature requirement such that there is a violation of Candidate's right to equal protection. However, the statute states that after redistricting every ward will have to comply with the same minimum signature requirement standard. Because of the redistricting the geographic boundaries of every ward in the city have changed so it makes no sense to use votes cast in old boundaries which do not correlate to new ward boundaries. Thus, the standard to be used is consistent, the vote totals for the larger unit of government which has not changed, the City, and the vote total for mayor, divided by 50. This uniform formula provides an equal number for all 50 wards (473) and there is no equal protection violation.

(R. 14-2, Ex. D, Cook County Opinion, at 4.) Accordingly, with respect to Rose's first four claims in this action, there was a final judgment on the merits rendered in the Cook County Action, there is an identity of the causes of action between Rose's claims here and his claims in the Cook County Action, and there is an identity of parties between the two cases. *See Dookeran*, 719 F.3d at 575. As such, the doctrine of claim preclusion prevents Rose from asserting those claims again here.

With respect to his fifth claim in the Amended Complaint, Rose alleges a due process violation because he "was not provided a hearing in a meaningful time and manner. Specifically, Plaintiff's records examinations were conducted prior to City of Chicago's new voter registration records being updated. Accordingly, the results of such examination were not accurate and such hearing was not meaningful because the records used to compare the signatures were not available thereby invalidating numerous signatures from Plaintiff's nomination papers." (R. 5, Am. Compl., at 21.) Plaintiff made the exact same argument in "Legal Issue 6" of his Amended

10

Memo in the Cook County Action. (R. 14-2, Am. Memo, at 13-14.) The Circuit Court explicitly rejected that argument as well, stating:

> Consistent with his scattershot approach, plaintiff next argues in his amended memorandum (but not in his petitions) that his procedural due process rights were violated because "he was not provided a hearing in a meaningful time and manner" and that due to a delay in updating the City of Chicago's voter registration records, the results of the record examination were not accurate and thus signatures which should not have been invalidated were removed from his nominating papers … Plaintiff waived this argument by failing to raise it in his petitions. Moreover, without citation to the record, the court has no idea what he is referencing.

(R. 14-2, Ex. D, Cook County Opinion, at 5.) Although the Cook County Circuit Court was not able to address the merits of this argument because it was not properly developed, there is no indication that the court was not willing to consider it, or that Rose did not have the opportunity to litigate it. As Illinois bars "the sequential pursuit not only of claims actually litigated, but of those that could have been litigated," claim preclusion applies to Rose's fifth count as well. *Garcia v. Vill. of Mount Prospect*, 360 F.3d. at 639.

In his sixth and final count, Rose alleges a violation under section 1983, but states only that "Plaintiff cites to and incorporates within this count all counts, statements, and exhibits, to support his claim for the Defendant's violation of Plaintiff's Civil Rights." (R. 5, Am. Compl., at 22.) Although Rose did not allege a section 1983 claim in the Cook County Action, claim preclusion still prevents Rose from asserting it here. As discussed above, claim preclusion under Illinois law applies to bar not only "claims actually litigated," but also "those that could have been litigated," if they "arise from a single group of operative facts" and the plaintiff had "a full and fair opportunity to litigate his claim in the prior action." *Dookeran*, 719 F.3d at 575-76 (quotation omitted). Rose's section 1983 claim arises from the same operative facts as his other five claims. Indeed, in support of this claim he relies solely on the allegations in the other counts. Rose also had a full and fair opportunity to litigate this claim in the Cook County

11

Action. State courts as well as federal courts have jurisdiction over § 1983 cases. *Howlett by and Through Howlett v. Rose*, 496 U.S. 356, 358, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990). Further, the Seventh Circuit has held that claim preclusion applies to bar a § 1983 claim in a federal action where the plaintiff failed to assert that claim in an earlier Illinois state court action seeking review of an administrative decision that arose out of the "same group of operative facts." *Garcia*, 360 F.3d at 637, 644. That is the case here. Thus, claim preclusion applies to Rose's sixth and final count as well.

B. Rose's Arguments

Plaintiff responds with a myriad of arguments that claim preclusion should not apply to bar his lawsuit. The Court addresses them in turn, grouping them by category.[8]

1. Final Judgment on the Merits Rendered by a Court of Competent Jurisdiction

Rose makes several arguments that the Cook County Action did not result in a "final judgment on the merits rendered by a court of competent jurisdiction." *Dookeran*, 719 F.3d at 575. First, he argues that the Cook County Opinion was not a final judgment on the merits because that court dismissed many of the claims as not being properly preserved or otherwise without making a finding on the merits. This assertion is simply not true. As discussed above, the Cook County Circuit Court specifically addressed the merits of four of his five arguments.[9]

---

[8] Rose makes numerous arguments that are undeveloped and not supported by relevant authority. To the extent the Court does not address an argument made by Rose, it finds it to be waived. *See Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) (quoting *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003)) ("it is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel," and "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.")

[9] Rose also argues that the Cook County Circuit Court's denial of his petition for judicial review was not a ruling on the merits because the petition was not granted and heard and then either affirmed or reversed. This argument fails for the same reason: the Cook County Circuit Court specifically addressed Rose's claims on their merits. Further, Rose did not appeal the decision so the appellate court had no opportunity to affirm or reverse the judgment of the Cook County Circuit Court.

With respect to Rose's due process argument, the court attempted to address the merits, but was unable to do so because Rose had not developed the factual basis of that argument. As noted, the relevant test under Illinois law is not whether Rose actually litigated his claim to a decision on the merits, but whether he had the opportunity to do so. *See Garcia*, 360 F.3d at 639.

Rose next argues that the Cook County Circuit Court did not have jurisdiction to review his voting rights claims. This argument is a non-starter because Rose himself chose to bring his voting rights claims before the Cook County Circuit Court, which the court addressed and rejected. Further, state courts generally have jurisdiction to decide whether a state statute violates the federal Voting Rights Act. *See Hathorn v. Lavorn*, 457 U.S. 255, 266-68, 102 S.Ct. 2421, 72 L.Ed.2d 824 (1982). The case cited by Rose in support, *Allen v. State Board of Elections*, 393 U.S. 544, 563, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969), stands for the entirely different proposition that the Voting Rights Act requires a state to seek federal approval before it makes certain changes to its election laws. That principle has no application to the facts here.

### 2. Identity of Claims

Rose next asserts that there is no identity of claims because "one cause of action was for review of an electoral board decision where no other claims can be made or joined as a matter of law and the cause of action here is for Violation of Federal Voting Rights." (R. 23, Pl.'s Reply, at 17.) Rose appears to be arguing that there is no identity of claims between this lawsuit and the records examinations before the Board of Elections. The relevant test, however, is whether there is an identity of claims between the action here and the Cook County Action, not whether there is an identity of claims between this action and the proceedings before the Board of Elections. *See Hayes v. City of Chicago*, 670 F.3d 810, 815 (7th Cir. 2012) (holding that the operative "first

13

judgment" for the claim preclusion analysis was the state court review of the plaintiff's administrative proceeding). Thus, this argument is also not persuasive.

### 3. Identity of the Parties

Next, Rose argues that the identity of the parties requirement is not met because although Defendants here were named as defendants in the Cook County Action, they were not "true adversaries." (R. 23, Pl.'s Reply, at 12.) Rose asserts that under Illinois law, the Board of Elections was only required to file the record of the administrative proceeding and was not an actual litigant, and the State of Illinois was not a party to the initial proceedings before the Board of Elections. This argument fails for several reasons. With respect to the State of Illinois, the operative test is not whether it was a party to the proceedings before the Board of Elections, but whether it was a party to the Cook County Action—which it was. With respect to the Board of Elections, another court in the Northern District has rejected this same argument that because a city electoral board is a "nominal" defendant in a state court administrative appeal it cannot be considered the "same party" for claim preclusion purposes in a later federal action. *See Girot v. Municipal Officers Electoral Bd. of City of Braidwood*, No. 05-CV-419, 2006 WL 59393, at *3-4 (N.D. Ill. 2006) (Pallmeyer, J.) The Court agrees that the "same parties" requirement is met where the Board of Elections is named as a defendant in both a state court review of a Board of Elections decision and a subsequent federal case. Rose submits no authority to the contrary.

### 4. Full and Fair Opportunity to Litigate

Additionally, Rose argues that he did not have the "full and fair opportunity to litigate" his claims because he was unable to raise many of them in his original hearing before the Board of Elections. This argument suffers from the same flaw as his "identity of claims" argument discussed above. The relevant test is not whether he was able to litigate his claims before the

Board of Elections, but instead whether he had the "full and fair opportunity to litigate" his claims in the Cook County Action. As noted, Plaintiff had the opportunity to raise each of the claims that he asserts here in the Cook County Action, which rejected each of the claims that he raised.

### 5. Additional Arguments

Finally, Rose makes several additional arguments for why the Court should not apply claim preclusion to bar his action. First, he argues that it would not be fair for the Court to apply claim preclusion because he was not able to appeal the judgment in the Cook County Action before the February 2015 Election, and any appeal after that date would have been moot. There are several problems with this argument. For one, Rose had from February 3, 2015 until the date of the election, February 24, 2015, to appeal the judgment of the Cook County Circuit Court, and he chose not to do so. Second, if Rose's appeal of the Cook County Action would have been moot following the February 2015 Election, Rose ignores that his action here should also be moot. Instead, Rose argues that the Court should place him on the April 2015 Election ballot, even though his name was not on the original February 2015 Election ballot. Rose fails to explain why he did not pursue that argument on appeal in Illinois state court.

Rose next argues that "peculiar circumstances" exist which should weigh against the Court applying claim preclusion. Rose argues that in the Cook County Action both objectors contended that the court should deny his petition for failure to exhaust his administrative remedies because he never brought his case to the Board of Elections' attention through a Rule 20 motion.[10] As discussed above, however, the Cook County Circuit Court addressed the merits

---

[10] Rule 20 of the Chicago Board of Elections Rules of Procedure states: "Any party disagreeing with the recommended findings and proposed decision of a hearing officer may move to have the Electoral Board review the hearing officer's recommendations and hear additional argument from the parties." *See* Chicago Board of Elections, Rules of Procedure, available at: http://app.chicagoelections.com/documents/M2015-RulesOfProcedure.pdf.

15

of Rose's claims, and did not decide the case on the basis that Rose failed to exhaust his administrative remedies. Rose also argues that the consolidation of his judicial review petitions was "peculiar and not orthodox" because it did not follow a general order of the Cook County Circuit Court. Even assuming, *arguendo*, that Rose has a valid argument, Rose fails to explain how the manner in which the court consolidated his petitions caused him prejudice. Further, the case Rose cites in support of his "peculiar circumstances" argument, *Toro v. Gainer*, 370 F.Supp.2d 736, 738-741 (N.D. Ill. 2005), addressed the preclusive effect of an earlier court's pre-trial ruling against the defendant, in a case where the defendant was ultimately acquitted. No such facts exist here.

Finally, Rose argues that the Court should not apply claim preclusion because there has been a change in the "applicable legal context." Rose fails to develop this argument, other than to state that "[t]his proceeding is challenging a new election, the validity of the prior election, the law under the prior election, and the amendment of the law enacted on January 12, 2015 which has future application and was not enacted during the original proceedings." (R. 23, Pl.'s Reply, at 16.) In fact, Rose is asserting claims that he already made in the Cook County Action. Although the February 2015 Election has taken place in the meantime, it does not alter the fundamental nature of Rose's claims. Additionally, Rose's argument that there has been a change in the law appears to be based on an amendment to the Illinois statute, 65 ILCS 20/21-28, that alters the signature requirements for nominating petitions for alderman. While that amendment was enacted on January 12, 2015, it does not take effect until June 1, 2015, and accordingly it does not have any effect on Rose's claims here. 2014 Ill. Legis. Serv. 98-1171.

In summary, the Court does not find any of Rose's arguments persuasive. The doctrine of claim preclusion bars all six of Rose's claims. For this reason, the Court grants Defendants'

16

motions to dismiss. In addition, even if Plaintiff could survive the motions to dismiss, he cannot show a likelihood of success on the merits of his preliminary injunction motion.[11]

## II. Balance of Harms

As a final matter with respect to Rose's preliminary injunction motion, the Court also finds that even if Rose could overcome Defendants' claim preclusion challenge and then otherwise show a likelihood of success on the merits, the balance of harms weighs strongly against the grant of a preliminary injunction. In *Nader v. Keith*, for example, the Seventh Circuit affirmed the denial of a preliminary injunction in part because the plaintiff "created a situation in which any remedial order would throw the state's preparations for the election into turmoil," and voters would be harmed "if a last-minute injunction disrupt[ed]" the election. *Nader v. Keith*, 385 F.3d 729, 736-37 (7th Cir. 2004); *see also Fulani v. Hogsett*, 917 F.2d 1028, 1031 (7th Cir. 1990) (barring plaintiff's claim on laches grounds where during plaintiff's delay in filing suit "the state proceeded with its election preparations, printed ballots, and commenced absentee balloting…Three weeks before the election it would have been extremely difficult, if not impossible, for [the state] to provide another set of ballots. Moreover, the confusion that would have attended such a last-minute change would have posed a risk of interference with the rights of other…citizens.")

> As the Board of Election Commissioners notes in its response brief:
>
> Plaintiff waited until February 25, 2015 to file an amended complaint and until March 9, 2015 to serve his motion for preliminary injunction.
>
> In the meantime, the Board conducted the February 24, 2015 Municipal General Election, and, because no candidate receive[d] a majority of votes cast, will conduct a runoff election on April 7, 2015 — three weeks away — in the 7th ward between the two candidates who received the highest and second-highest number of votes at the February election. Importantly, the printing of substantially all ballots in the 7th ward of [the] City

---

[11] Accordingly, the Court does not address Rose's other arguments in his preliminary injunction motion that he would be likely to succeed on the merits.

> of Chicago has been completed. The Board began mailing absentee ballots on Friday, March 13, 2015. Grace Period voting officially began on March 11, 2015. Early Voting is scheduled to begin on March 23, 2015. To prepare for these events, sufficient quantities of touchscreen voting devices must be programmed and tested before they can be deployed for use in Grace Period and Early Voting. Such testing has already begun.
>
> In short, the Board's election preparations have been in full swing while Plaintiff stood on the sidelines. In addition to the costs involved in the rebooting of the election, any material delay occasioned by the reprinting and reprogramming of election equipment and the re-testing of the equipment places the integrity of the election itself in jeopardy. Absentee ballots already issued prior to entry of an injunction would have to be re-issued and older ballots replaced. Any attendant delay in the issuance of corrected absentee ballots or in the commencement of Grace Period and Early Voting may possibly disenfranchise voters who do not receive or cannot access a ballot in sufficient time to cast a ballot.

(R. 16, Opp. Memo., at 13-14) (citation omitted). Rose does not dispute these facts, and the Court finds them significant. Granting Rose's preliminary injunction would indisputably cause significant disruption to the April 2015 Election.

Finally, granting Rose's injunction would allow him to bypass the February 2015 Election and proceed straight to the April 2015 run-off election, which would effectively reward him for his delay in moving for injunctive relief. Despite originally filing this lawsuit on January 15, 2015, well before the February 24, 2015 election, Rose waited until March 9, 2015 to file his motion for a preliminary injunction. Rose gives no explanation for this delay. Even if Rose were likely to succeed on the merits of his claim, the Court cannot allow him to skip directly to the run-off election where he could have moved for relief much earlier. There were eight candidates on the February 2015 Election ballot for Alderman of the Seventh Ward[12]—granting his preliminary injunction would allow Rose, without receiving a single vote, to jump ahead of the six candidates who did not receive enough votes to qualify for the April 2015 Election. Such a result would harm the integrity of the process and the election.

---

[12] *See* Chicago Board of Election Commissioners, Statement of the Returns and Proclamation of the Results, available at: http://www.chicagoelections.com/dm/general/SummaryReport.pdf.

**CONCLUSION**

For the foregoing reasons, the Court grants Defendants' motions to dismiss with prejudice and denies Plaintiff's motion for a preliminary injunction.

**DATED: March 30, 2015**  ENTERED

_____
AMY J. STUEVE
U.S. District Court Judge